IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KELLY RAE BYERS**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) 2:12cv1078 |
| v. | ) **Electronic Filing** |
| | ) |
| **CAROLYN W. COLVIN**, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM OPINION

## I. INTRODUCTION

Kelly Rae Byers ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 – 433, 1381 – 1383f ("Act"). This matter comes before the court on cross motions for summary judgment. (ECF Nos. 6, 8). The record has been developed at the administrative level. For the following reasons, Plaintiff's Motion for Summary Judgment will be denied, and Defendant's Motion for Summary Judgment will be granted.

## II. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI on July 14 and 16, 2009, respectively, claiming that she was disabled from all work as of April 16, 2009. (R. at 128 – 37)[1]. Plaintiff's inability to work

---
[1] Citations to ECF Nos. 4 – 4-12, the Record, *hereinafter*, "R. at __."

allegedly stemmed from fibromyalgia, arthritis, post-traumatic stress disorder, attention deficit hyperactivity disorder, bladder problems, knee, foot, and elbow pain, seasonal allergies, asthma, and depression. (R. at 157). Plaintiff was initially denied benefits on December 11, 2009. (R. at 68 – 91). A hearing was scheduled for March 3, 2011, and Plaintiff appeared to testify represented by counsel. (R. at 27 – 63). A vocational expert also testified. (R. at 27 – 63). The Administrative Law Judge ("ALJ") issued his decision denying benefits to Plaintiff on April 12, 2011. (R. at 7 – 26). Plaintiff filed a request for review of the ALJ's decision by the Appeals Council, which request was denied on June 26, 2012, thereby making the decision of the ALJ the final decision of the Commissioner. (R. at 1 – 4).

Plaintiff filed her Complaint in this court on July 31, 2012. (ECF No. 1). Defendant filed an Answer on October 1, 2012. (ECF No. 3). Cross motions for summary judgment followed. (ECF Nos. 6, 8). The matter has been fully briefed, and is ripe for disposition.

**III.   STATEMENT OF THE CASE**

**A. <u>General Background</u>**

Plaintiff was born on October 3, 1966, was forty two years of age at the time of her application for benefits, and forty four years of age at the time of the ALJ's decision. (R. at 147). Plaintiff lived in a home with her husband and eighteen year old son. (R. at 168). Plaintiff received medical benefits through her husband. (R. at 33). Plaintiff completed high school, two years of college, and some undefined degree of vocational training. (R. at 166). Plaintiff had most recently worked at or near full-time as an "assistant group supervisor" at a daycare. (R. at 158). At the time of her administrative hearing, she was working part-time as a "sales associate" for a home party sales company, offering both candles and jewelry. (R. at 33, 158).

## B. Medical History[2]

Orthopedic surgeon David Tonnies, M.D. began treating Plaintiff for ganglion cysts in her hands and wrists. Plaintiff was scheduled to have a cyst removed from her right wrist by Dr. Tonnies on October 7, 2008. (R. at 242, 308). A lump had appeared on her right wrist approximately six months earlier, and the lump had become painful approximately one-and-one-half months earlier. (R. at 241). Plaintiff was noted to have limited range of motion in the wrist, with concurrent shooting, throbbing pain, and numbness and tingling. (R. at 241 – 42). Further physical examination revealed no acute pathology in the remaining joints of Plaintiff's upper and lower extremities. (R. at 242, 309 – 10). Plaintiff was neurovascularly intact, with no focal deficits in the upper and lower extremities. (R. at 242, 309 – 10). The cyst was removed on October 7.

On November 3, 2008, Plaintiff appeared before Dr. Tonnies complaining of right foot pain. (R. at 368 – 69). Surgery had been performed on Plaintiff's foot one year prior. (R. at 368). She complained of occasional "bad days" with significant pain. (R. at 368). Dr. Tonnies observed Plaintiff's gait and station to be within normal limits. (R. at 368). There was no tenderness on palpation of her foot, and she had no focal deficits. (R. at 368). Examination of Plaintiff's remaining joints also demonstrated no abnormal pathology. (R. at 368). X-rays of Plaintiff's right foot revealed no degenerative changes or fractures. (R. at 368). Plaintiff was diagnosed with right foot tendonitis. (R. at 368). Dr. Tonnies would continue to monitor her foot pain. (R. at 368). On December 1, 2008, Plaintiff returned for an evaluation of her right

---

[2] In her Motion for Summary Judgment, Plaintiff raises no objections to the ALJ's conclusions regarding the impact of mental impairments on Plaintiff's ability to work. (ECF No. 7 at 8 – 11). As a result, discussion will primarily focus upon the facts on record which pertain to Plaintiff's physical impairments.

wrist by Dr. Tonnies. (R. at 366). Plaintiff's wrist was well-healed, with near normal range of motion and grip strength. (R. at 366). She was to return to Dr. Tonnies on an as-needed basis. (R. at 366).

On February 18, 2009, x-rays of Plaintiff's cervical spine demonstrated the presence of cervical spondylosis, mild foraminal encroachment at C5 – C7, and mild uncovertebral spurring. (R. at 279). On March 23, 2009, an x-ray of Plaintiff's pelvis revealed mild superior joint space narrowing in both hips. (R. at 312). That same day, an x-ray of Plaintiff's right knee demonstrated only mild medial and lateral joint space narrowing with a tiny joint effusion. (R. at 313). An x-ray of the left knee revealed only mild medial joint space narrowing. (R. at 315). An x-ray of Plaintiff's lumbar spine showed normal alignment without compression deformity, facet sclerosis at L4 – S1, and mild disc space narrowing at L5 – S1. (R. at 314).

Plaintiff was examined by rheumatologist Farooq Hassan, M.D. on March 23, 2009. (R. at 316 – 18). Plaintiff had been referred by her primary care physician due to suspected polyarthralgias, myalgias, fibromyalgia, and osteoarthritis. (R. at 316). Plaintiff's joint pain had allegedly started around twenty seven years of age, and progressively worsened. (R. at 316). Dr. Hassan noted that x-rays revealed the presence of degenerative arthritis. (R. at 316).

Upon physical examination, Dr. Hassan observed Plaintiff to be in no acute distress, with no active synovitis in Plaintiff's joints, good range of motion in all joints, bilateral knee crepitations, and tender points in the mid trapezius region, lateral epicondyle, medial fat pad of the knee, trochanteric area, and gluteal area. (R. at 317). Dr. Hassan concluded that Plaintiff did not likely have inflammatory arthritis, but osteoarthritis and fibromyalgia. (R. at 317). Plaintiff was advised to engage in low-impact aerobics and stretching exercises, was given injections for

pain in her lower back, and prescription medication for pain management. (R. at 317). Plaintiff was to follow up in three to four weeks. (R. at 317).

Dr. Tonnies performed another surgical procedure on Plaintiff's right wrist on April 16, 2009, as a result of recurring pain following Plaintiff's first operation, which had initially eliminated Plaintiff's pain. (R. at 386 – 87). Plaintiff had complained of difficulty lifting, pushing, and pulling. (R. at 364). She was having difficulty with activities of daily living, but denied any other orthopedic complaints. (R. at 364). During Plaintiff's second procedure, Dr. Tonnies removed a small, recurrent ganglion cyst. (R. at 387).

On May 11, 2009, Plaintiff was again examined by Dr. Hassan. (R. at 320 – 21). Plaintiff complained of pain in her neck and lower back, fatigue, and stiffness. (R. at 320). She indicated that she was having difficulty working and completing daily activities. (R. at 320). Upon examination, Dr. Hassan observed Plaintiff's neck to be supple, Plaintiff had no active synovitis, she had good range of motion in all joints, and she had diffuse, generalized tender points. (R. at 320). Dr. Hassan's assessment continued to be osteoarthritis and fibromyalgia. (R. at 321). Injections for pain were administered to four muscle groups on Plaintiff's upper and lower back, and her prescription medications were increased. (R. at 321). She was advised to return for reevaluation in two or three months. (R. at 321).

On June 22, 2009, Plaintiff underwent an MRI of her right knee. (R. at 377 – 78). There was no meniscal tear, but mild tricompartmental degenerative joint disease was noted. (R. at 377 – 78). Plaintiff complained of pain climbing the stairs and squatting. (R. at 357). Plaintiff was advised by Dr. Tonnies to engage in physical therapy for her right knee pain. (R. at 359).

Dr. Tonnies again examined Plaintiff on June 29, 2009 for complaints of right knee pain. (R. at 355). Plaintiff was observed to have a normal gait and station, and her knee showed no

5

bruising or ecchymosis, no swelling, and no focal deficit. (R. at 355). Pain was noted around the patella, but Plaintiff had a full range of motion in the knee. (R. at 355). Plaintiff was diagnosed with right knee degenerative joint disease with effusion, and right knee tendinitis. (R. at 355). Plaintiff did not wish to pursue surgical intervention, so Dr. Tonnies recommended a home exercise program for strengthening and conditioning. (R. at 355).

At a follow-up with Dr. Tonnies on July 27, 2009, Plaintiff's right wrist was noted to be "doing very well at this time." (R. at 354). Plaintiff complained of ongoing knee problems. (R. at 354). Physical examination revealed no focal deficits, normal gait and station, and no acute pathology in Plaintiff's joints. (R. at 354).

On October 7, 2009, Dr. Tonnies completed a Medical Source Statement of Claimant's Ability to Perform Work-Related Physical Activities. (R. at 352 – 52). He indicated therein that Plaintiff had no limitation in lifting and carrying, no limitation sitting, standing, or walking, no limitation pushing and pulling, no limitations with postural or other physical functions, and no environmental restrictions. (R. at 351 – 52). No narrative statement accompanied the assessment.

On October 23, 2009, state agency evaluator Dilip S. Kar, M.D. completed a Physical residual Functional Capacity Assessment ("RFC") of Plaintiff. (R. at 403 – 10). Based upon a review of the medical record, Dr. Kar believed that the evidence supported finding impairment in the way of fibromyalgia, arthritis, asthma, and depression. (R. at 403). Dr. Kar opined that, as a result, Plaintiff would be limited to occasionally lifting and carrying twenty pounds and frequently lifting and carrying ten pounds, standing and walking six hours of an eight hour work day and sitting six hours, only occasionally climbing, balancing, stooping, kneeling, crouching, and crawling, and no exposure to extreme heat and cold, wetness, humidity, fumes, odors, dusts,

gases, and poor ventilation. (R. at 404 – 06). Dr. Kar believed that Dr. Tonnies' functional assessment was an underestimate of Plaintiff's limitations. (R. at 409 – 10).

Plaintiff was examined by her primary care physician, David G. Hoyt, D.O. on March 15, 2010. Plaintiff complained of numbness and loss of fine manipulation in the hands, and tingling in the legs. (R. at 457). Plaintiff was taking her prescribed medications, was exercising, was engaging in normal activities, and had normal ambulation, but complained of significant pain. (R. at 457). Dr. Hoyt stated that Plaintiff's "condition has been uncontrolled." (R. at 457). She did not have medication side-effects. (R. at 457). Physical examination showed that Plaintiff had full range of motion in her neck, she had a normal gait, she had full range of motion in her upper and lower extremities, and her sensation and reflexes were intact. (R. at 460). Plaintiff was continued on her current medications. Dr. Hassan administered injections to Plaintiff's knees for pain relief on March 11, 18, and 24, 2010. (R. at 466 – 70). Plaintiff tolerated the procedures well. (R. at 466 – 70). No other findings accompanied the notes regarding Plaintiff's injections.

In March and April 2010, Plaintiff was referred to Robert O. Salcedo, M.D., by her primary care physician for neurological and behavioral testing. (R. at 428 – 31). Physical examinations revealed that Plaintiff's neck muscles were equal and strong, she had no atrophy or deformity, she had normal bulk, tone, and strength in her muscles, she had normal sensation, she had normal coordination, she had no tremors, her reflexes were present, her gait was normal, and Romberg tests were negative. (R. at 428, 430). Her neurological exams were considered to be normal. (R. at 428). An MRI of Plaintiff's brain was normal, as were laboratory tests and an EEG. (R. at 428). Plaintiff had perfect cognition, but profound underlying depression. (R. at 428).

Plaintiff was under the care of Brian P. Spencer, D.P.M., in January 2010 for complaints of foot pain. (R. at 477). Plaintiff was diagnosed with fibroma and mild hallux varus on her right foot. (R. at 477). A steroid injection was administered, and Plaintiff's foot was placed in a strapping modality. (R. at 477). Her condition would be monitored for changes. (R. at 477). Plaintiff returned to Dr. Spencer on February 8, 2011, because of pain related to a hammertoe on Plaintiff's right foot. (R. at 513). Plaintiff complained that the pain was unbearable with walking and activity. (R. at 513). Dr. Spencer did not observe Plaintiff to be in acute distress, and her gait was normal. (R. at 513 – 14). Plaintiff's fibroma had decreased in size since her last visit. (R. at 514). Plaintiff's hammertoe was considered to be mild. (R. at 514). Tender points were noted, but not fibromyalgia tender points. (R. at 514). Plaintiff's sensation and strength were normal, as was her coordination. (R. at 514). Plaintiff was advised to start therapy and obtain insoles for her foot conditions. (R. at 514). However, Dr. Spencer opined that Plaintiff had "no limitations, no restrictions," with respect to her feet. (R. at 514).

Plaintiff returned to Dr. Hassan's care on March 2, 2011. (R. at 540 – 42). She presented to Dr. Hassan stating that "lately" she had been experiencing pain in her back, neck, and shoulder, as well as achiness, fatigue, and stiffness. (R. at 540). Upon examination, Dr. Hassan noticed no synovitis or effusion, Plaintiff had good range of motion in all joints, Patrick's maneuver was negative, and Schober's test was normal. (R. at 541). Dr. Hassan did observe significant tender points on the shoulders, back, and legs. (R. at 541). Dr. Hassan administered two injections to Plaintiff's lower back for pain. (R. at 541). Plaintiff was diagnosed with chronic fibromyalgia pain syndrome and osteoarthritis of the knees. (R. at 541). Plaintiff's knees were considered to be stable. (R. at 541). Plaintiff was considered to be on optimum drug therapy, and was advised to pursue physical therapy and water therapy for additional pain relief.

(R. at 541). Plaintiff was not going to be treated by Dr. Hassan for another year, because she was noted to be going "out of state." (R. at 541).

### C. <u>Administrative Hearing</u>

At her hearing, Plaintiff testified that in addition to her fibromyalgia, she had arthritis in her neck, low back, hands, hips, knees, and right foot. (R. at 24). She also claimed to suffer from headaches and tremors. (R. at 55). Plaintiff stated that she was evaluated by Dr. Hassan for her fibromyalgia every one-to-six months. (R. at 35 – 36). Plaintiff explained that her fibromyalgia pain tended to focus on one part of the body, and slowly migrated to another part. (R. at 40). Her pain could last as few as ten minutes, and as much as two days. (R. at 40). Plaintiff's knee pain was helped by injections from Dr. Hassan. (R. at 44).

During a typical day, Plaintiff might be working on the computer in preparation for a candle or jewelry show, she would clean laundry and dishes, and she was capable of a limited degree of vacuuming and yard work. (R. at 49 – 51, 56). Her husband and son helped with chores, as well. (R. at 49 – 51). Plaintiff rested frequently for fifteen minutes to an hour during household activities, and would often take naps during the week for an hour to an hour-and-a-half. (R. at 50, 56). Plaintiff arranged shows once every few weeks. (R. at 51). Plaintiff's pain made setting up for her shows difficult, and she required help carrying heavier items. (R. at 57 – 58). Plaintiff was able to take trips to visit an adult daughter in North Carolina, but stopped frequently along the way. (R. at 52 – 53).

Following Plaintiff's testimony, the ALJ asked the vocational expert whether a hypothetical person of Plaintiff's age, educational level, and work background would be eligible for a significant number of jobs in existence in the national economy if limited to light work involving: only occasional climbing of ramps and stairs, balancing, stooping, crouching,

crawling, and kneeling, only simple, routine, repetitive tasks, no fast-paced work environments, only simple work-related decisions, few work place changes, low stress, and no independent decision-making, close supervision, or close interaction with co-workers and the public. (R. at 61). The vocational expert responded that such a person would be capable of work as a "packer," with 60,000 positions available in the national economy, as a "sorter," with 40,000 positions available, and as an "assembler," with 150,000 positions available. (R. at 62). The ALJ then asked whether such an individual could sustain full-time employment if off-task more than ten percent of any given work day. (R. at 62). The vocational expert replied that no jobs would be available to such a person. (R. at 62).

**IV.     STANDARD OF REVIEW**

To be eligible for social security benefits under the Act, a claimant must demonstrate to the Commissioner that he or she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler*, 786 F. 2d 581, 583 (3d Cir. 1986).

When reviewing a claim, the Commissioner must utilize a five-step sequential analysis to evaluate whether a claimant has met the requirements for disability. 20 C.F.R. §§ 404.1520, 416.920. The Commissioner must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, App'x 1; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work,

whether he can perform any other work which exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Barnhart v. Thomas*, 540 U.S. 20, 24 – 25 (2003). If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given claimant's mental or physical limitations, age, education, and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler*, 790 F. 2d 26, 28 (3d Cir. 1986).

Judicial review of the Commissioner's final decisions on disability claims is provided by statute, and is plenary as to all legal issues. 42 U.S.C. §§ 405(g)3, 1383(c)(3)4; *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 431 (3d Cir. 1999). Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based; the court will review the record as a whole. See 5 U.S.C. §706. The district court must then determine whether substantial evidence existed in the record to support the Commissioner's findings of fact. *Burns v. Barnhart*, 312 F. 3d 113, 118 (3d Cir. 2002).

---

[3] Section 405(g) provides in pertinent part:
> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business

42 U.S.C. § 405(g).

[4] Section 1383(c)(3) provides in pertinent part:
> The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. *Ventura v. Shalala*, 55 F. 3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson*, 402 U.S. at 390. When considering a case, a district court cannot conduct a de novo review of the Commissioner's decision nor re-weigh the evidence of record; the court can only judge the propriety of the decision in reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196 – 97 (1947). The court will not affirm a determination by substituting what it considers to be a proper basis. *Chenery*, 332 U.S. at 196 – 97. Further, "even where this court acting de novo might have reached a different conclusion . . . so long as the agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings." *Monsour Medical Center v. Heckler*, 806 F. 2d 1185, 1190 – 91 (3d. Cir. 1986).

V. **DISCUSSION**

In his decision, the ALJ determined that Plaintiff suffered severe, medically determinable impairments in the way of generalized anxiety disorder, major depressive disorder, post-traumatic stress disorder, fibromyalgia, degenerative disc disease, degenerative joint disease, ganglion cyst on right wrist status post excision, and fibroma, hammertoe, and hallux varus on the right foot. (R. at 13). Due to the above impairments, the ALJ found that Plaintiff would be limited to light work involving: no more than occasional climbing of ramps and stairs, balancing, stooping, crouching, crawling, and kneeling, only simple, routine, repetitive tasks, no fast-paced

production environments, only simple work-related decisions, relatively few work place changes, and no high levels of stress, independent decision-making, close supervision, or close interaction with co-workers or the public. (R. at 15). Based upon the testimony of the vocational expert, the ALJ concluded that even with such limitations, Plaintiff would be capable of obtaining a significant number of jobs in existence in the national economy. (R. at 21 – 22). Thusly, Plaintiff was denied DIB and SSI. (R. at 22).

Plaintiff objects to the decision of the ALJ, arguing that he erred in failing to give greater weight to Plaintiff's subjective complaints, in failing to give greater weight to the findings of Dr. Hassan, in failing to give greater weight to the opinion of therapist Mary Davis, M.A., and in finding that Plaintiff could engage in a significant number of jobs in the national economy even though she could not return to past employment. (ECF No. 7 at 8 – 12). Defendant counters that the ALJ adequately supported his decision with substantial evidence from the record, and should be affirmed. (ECF No. 9 at 7 – 14). The court agrees with Defendant.

As noted by Plaintiff, the ALJ accorded diminished weight to Plaintiff's subjective complaints of pain because of inconsistency with – and lack of support from – the medical record. (ECF No. 7 at 9 – 10; R. at 17). The United States Court of Appeals for the Third Circuit has held that an ALJ should accord subjective complaints of pain similar treatment as objective medical reports, and weigh the evidence before him. *Burnett v. Comm'r of Soc. Sec.*, 220 F. 3d 112, 122 (3d Cir. 2000). Serious consideration must be given to subjective complaints of pain where a medical condition could reasonably produce such pain. *Mason v. Shalala*, 994 F. 2d 1058, 1067 – 68 (3d Cir. 1993). It is the ALJ's duty to assess the intensity and persistence of a claimant's complaints of pain and limitation, and determine the extent to which a claimant's ability to work is impaired. *Hartranft v. Apfel*, 181 F. 3d 358, 362 (3d Cir. 1999). This includes

13

determining the accuracy of a claimant's subjective complaints of pain. *Id.* While pain itself may be disabling, and subjective complaints of pain may support a disability determination, allegations of pain suffered must be consistent with the objective medical evidence on record. *Ferguson v. Schweiker*, 765 F. 2d 31, 37 (3d Cir. 1985); *Burnett*, 220 F. 3d at 122.

In the case at present, the ALJ relied upon a number of factors when declining to give significant weight to Plaintiff's complaints of pain. The ALJ noted that, aside from recording Plaintiff's complaints of pain, as well as diffuse fibromyalgia tender points, Dr. Hassan reported mostly normal physical examination findings. (R. at 17). While he did not discount Plaintiff's complaints of pain, he never indicated that she suffered significant functional limitation. (R. at 17 – 19). Additionally, Plaintiff's visits with Dr. Hassan were widely dispersed. (R. at 17). While the ALJ's statement that Plaintiff had a treatment gap of two years with Dr. Hassan was inaccurate, Plaintiff did have gaps of approximately one year between treatment dates in 2009, 2010, and 2011, and the ALJ correctly noted that the 2010 records contained no treatment notes. (R. at 18). Such sporadic treatment certainly girds the ALJ's conclusion that Plaintiff's fibromyalgia may not have been as severely limiting as claimed. (R. at 17). *See Machen v. Colvin*, 2013 WL 3168658 at *9 (W.D. Pa. Jun. 2013) ("Statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints") (quoting Social Security Ruling 96-7p); *Mason v. Shalala*, 994 F. 2d 1058, 1068 (3d Cir. 1993) ("We do not quarrel with the ALJ's entitlement to draw an inference adverse to appellant from the fact that appellant had not sought medical assistance to relieve his professed pain").

The ALJ also relied upon conclusions by Drs. Tonnies and Spencer that Plaintiff had no functional limitations. (R. at 19). Physical examinations by both these doctors, as well as by Dr. Salcedo, were relatively normal. (R. at 17 – 19). While diagnostic imaging studies revealed

abnormalities, these were generally mild in nature. (R. at 18 – 19). Plaintiff's primary care physician, Dr. Hoyt, and Plaintiff's treating therapist, Ms. Davis, noted that Plaintiff did not experience medication side-effects. (R. at 20, 457, 519 – 31). The opinion of state agency evaluator Dr. Kar also provided function limitations which restricted Plaintiff to no less than light work. (R. at 20). *See Chandler v. Comm'r of Soc. Sec.*, 667 F. 3d 356, 361 (3d Cir. 2012) (citing Social Security Ruling 96-6p) ("State agent opinions merit significant consideration," because "[s]tate agency medical and psychological consultants . . . are experts in the Social Security disability programs").

While Plaintiff's complaints of pain were documented consistently throughout the record, so were objective medical observations that did not support the degree of limitation she alleged. While tender points suggestive of fibromyalgia were found, no treating medical sources on record indicated that Plaintiff's fibromyalgia was disabling. *See Thompson v. Halter*, 45 F. App'x 146, 148 (3d Cir. 2002) ("While the absence of such a statement is not dispositive of the issue of disability, it is surely probative of non-disability"). While due regard must be given to the beneficent purposes of the Act, the burden is still upon Plaintiff to provide more than evidence of severe impairment, but also evidence of limitation so severe as to preclude substantial gainful activity. *Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) (citing *Petition of Sullivan*, 904 F. 2d 826, 845 (3d Cir. 1990)); *Ventura v. Shalala*, 55 F. 3d 900, 902 (3d Cir. 1995). Plaintiff did not meet this burden, here.

To the extent that Plaintiff wishes this court to rely upon the disability determination of therapist Davis, the court declines to do so. In her brief statement of April 2, 2010 regarding Plaintiff's psychological treatment history with her, Ms. Davis opined that Plaintiff was "unable to work due to her physical limitations which cause extreme pain and weakness." (R. at 539).

15

The ALJ declined to give this opinion significant weight, and was justified in so doing. (R. at 20). Not only was Plaintiff not being treated by Ms. Davis for physical ailments, as noted by the ALJ, but her conclusion that Plaintiff's impairments caused weakness was refuted many times over by the findings of Plaintiff's treating physicians indicating that Plaintiff had full strength. The determination of disabled status for the purpose of receiving benefits – a decision reserved for the Commissioner, only – will not be affected by a medical source simply because it states that a claimant is disabled or unable to work. *Adorno v. Shalala*, 40 F. 3d 43, 47 – 48 (3d Cir. 1994) (citing *Wright v. Sullivan*, 900 F. 2d 675, 683 (3d Cir. 1990)); 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2). Moreover, a medical opinion is not entitled to any weight if unsupported by objective evidence in the medical record. *Plummer v. Apfel*, 186 F. 3d 422, 430 (3d Cir. 1999) (citing *Jones v. Sullivan*, 954 F. 2d 125, 129 (3d Cir. 1991)). The ALJ did not believe Ms. Davis' conclusion to be supported, and his discussion provided substantial evidence to bolster this determination.

Plaintiff's last contention is that the vocational expert's testimony that Plaintiff could not perform past relevant work as a secretary was inconsistent with testimony that she was capable of working as a packer, sorter, or assembler. (ECF No. 7 at 10). Plaintiff provides no evidence to support this argument. *See Shinseki v. Sanders*, 556 U.S. 396, 410 (2009) ("[I]t normally makes sense to ask the party seeking reversal to provide an explanation . . . by marshaling the facts and evidence showing the contrary"); *Rutherford v. Barnhart*, 399 F. 3d 546, 553 (3d Cir. 2005) (citing *Skarbek v. Barnhart*, 390 F. 3d 500, 504 (7th Cir. 2004)) (remand requires more than a generalized argument and speculation). As such, the court will not find in Plaintiff's favor, here.

VI CONCLUSION

Based upon the forgoing, substantial evidence was provided by the ALJ to support his ultimate disability determination. Accordingly, Plaintiff's Motion for Summary Judgment will be denied, Defendant's Motion for Summary Judgment will be granted; and, the decision of the ALJ will be affirmed. Appropriate orders follow.

Date: September 30, 2013

s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc: Lewis P. McEwen, Esq.
McEwen Law Firm
234 West Pine Street
P.O. Box 510
Grove City, PA 16127
(724) 458-8890

Christy Wiegand, Esq.
United States Attorney's Office
700 Grant Street
Suite 4000
Pittsburgh, PA 15219
(412) 644-3500